375 So.2d 1333 (1979)
STATE of Louisiana
v.
Carl LOZIER.
No. 64211.
Supreme Court of Louisiana.
October 8, 1979.
Rehearing Denied November 1, 1979.
*1334 William Noland, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Phillip J. Boudousque, Robert T. Myers, Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Carl Lozier was charged by bill of information with having committed two aggravated burglaries. Defendant was tried by jury and convicted on both counts.
He was sentenced as a multiple offender to fifteen years at hard labor.
The first count charged that defendant entered Henry Hotard's apartment at 937 Pleasant Street after an accomplice, Angela Clay, locked Hotard in his bathroom, then admitted Lozier by unlocking the front door. While Hotard was in the bathroom, Lozier stole Hotard's pistol from the apartment.
The second count charged Lozier with procuring entry into a residence at 1323 St. Andrew Street # 7 by impersonating a policeman. Lozier and a confederate, who was dressed as a New Orleans Policeman, appeared at the St. Andrew Street residence. Subsequently Lozier and his accomplice gained entry into the residence by telling Mr. Havhuburg, an occupant, that they were policemen looking for counterfeit money. Mr. Havhuburg showed Lozier's accomplice the money that was in the house which the accomplice pronounced as "counterfeit" and seized.
Defendant contends that the trial court committed the following errors:
1. The trial court allowed the state over objection by the defense to amend the Bill of Information to substitute "1323 St. Andrew Street, Apartment No. 7" for "1323 St. Andrew Street Apartment No. 6."
2. Defendant's motion for a new trial on the grounds that the jury foreman was observed taking notes during the trial in violation of La.C.Cr.P. art. 793 was improperly denied.
3. The state presented no evidence that the defendant's entry was "unauthorized" as is required by R.S. 14:60.
4. The trial court over objection of the defendant allowed into evidence at the multiple bill hearing a certified copy of prison documents from the Louisiana State Penitentiary and a certified copy of case no. 239-508 of the Orleans Parish Criminal District Court Docket without proper foundation.
5. The state presented no evidence that Lozier, who plead guilty to another charge on March 7, 1974, was the same person convicted on April 4, 1978.
*1335 La.C.Cr.P. art. 487[1] orders a court to declare a mistrial if an indictment is amended with respect to a defect of substance after a trial begins. The state admits that the trial had begun when they amended the Bill of Information, but they contend that changing "1323 St. Andrew Street # 6" to "1323 St. Andrew Street # 7" was a defect in form only. As the mistake in the Bill of Information was a good faith error and the defense failed to present any evidence of prejudice, the trial court was correct in refusing defendant's motion for a mistrial.
Lozier urges that his convictions should be reversed on the grounds that the jury foreman violated La.C.Cr.P. art. 793[2] by taking notes while the judge repeated his instruction to the jury, referring to those notes in the presence of another juror, and showing those notes to another juror. The note taking took place when the jury returned to the courtroom after forty-five minutes of deliberation to rehear the judge's charges on the difference between simple and aggravated burglary. According to the sworn testimony of the defense counsel, he observed the foreman taking notes at this time, but he did not object, nor did he ask to approach the bench. Under these circumstances, we hold that the defense waived their right to object to this violation of La.C.Cr.P. art. 793 by not making a contemporaneous objection. State v. Anderson, 333 So.2d 919 (La.1976).
The issue presented by defendant's assignment of error number three has never been directly confronted by a Louisiana court: Does entry by misrepresentation constitute "unauthorized" entry,[3] an essential element of aggravated burglary.[4] Generalizations about the law of burglary in other states is difficult, because most states have replaced the common law "breaking *1336 and entering" requirement with varied entry requirements. These include Louisiana's "unauthorized" entry, La.R.S. 14:60; Nebraska's "willful and malicious" entry, Neb.R.S. of 1943, 28-532; Oregon's "unlawful" entry, Or.R.S. 164:205, et seq. and California's liberal entry with felonious intent. Cal.Pen.C. Sec. 459 et seq.
Traditionally consent to enter is a defense against burglary, but this consent may be vitiated by fraud or threat of force. 2 Wharton's Criminal Law and Procedure, Roland Anderson (ed.), 1957, Sec. 415, p. 39. LaFave and Scott states that an entry gained through fraud or threat of force was a constructive breaking, but if the occupant had a reasonable chance to close the opening procured in this manner then no breaking would have occurred. LaFave and Scott, Criminal Law, Sec. 96, p. 709.
Fraud and deceit are irrelevant under California type statutes which require an "entry", although the jurisprudence in those states sometimes requires that the entry be without the consent of the occupant. People v. Gauze, 15 Cal.3d 709, 125 Cal.Rptr. 773, 542 P.2d 1365 (1975). In a long line of cases beginning with People v. Barry, 94 Cal. 481, 29 P. 1026 (1892), California courts have held that a person can be convicted of burglary even if his entry was not trespassory. A person who enters a store with the intent to commit a felony therein can be convicted of burglary even if he enters during business hours and never strays from areas open to the public. People v. Brittain, 142 Cal. 8, 75 P. 314 (1904). The California courts have upheld burglary convictions for shoplifting, People v. Corral, 60 Cal.App.2d 66, 140 P.2d 172 (1940), and for flim-flam artists who shortchange cashiers. People v. Stone, 155 Cal.App.2d 259, 318 P.2d 25 (1957).
Several states have criticized the California rule on the grounds that it is overbroad, or they have disregarded California cases on the grounds that their state statutes require more than "entry" with intent to commit a crime therein. People v. Carstensen, 161 Colo. 249, 420 P.2d 820 (1966); State v. Taylor, 17 Or.App. 499, 522 P.2d 499 (1974); State v. Rogers, 83 N.M. 676, 496 P.2d 169 (N.M.App.1972); Smith v. State, 362 P.2d 1071 (Alaska, 1961). In those states the "entry . . . must be unlawful in itself, that is, trespassory, and without regard to the second element of the crime, the intent to steal." Id., 362 P.2d at 1073.
This Court rejected the California rationale that an entry with felonious intent is an unauthorized entry in State v. Dunn, 263 La. 58, 267 So.2d 193 (1972):
"We conclude that an entry into a building open to the public at the designated hours and within the designated confines is not an unauthorized entry regardless of the intent of the person so entering." See, Smith v. State of Alaska, (Alaska), 362 P.2d 1071, 93 A.L.R.2d 525.
The court stated that "unauthorized" entry is an entry without consent, express or implied. In the case of a building open to the public, authorization to enter is implied.
In the case of a private dwelling a person must have the consent of an occupant or an occupant's agent to constitute a defense to "unauthorized" entry. This consent must be given by a person with authority and capacity to consent. 1 Wharton's Criminal Law, Charles Torcia, (ed.), 14th edition, 1978, § 46, p. 231. The consent must be voluntary and intelligent, that is, based on a reasonable understanding of the identity and purpose of the intruder. Id. Wharton p. 231. Obviously, a child who admits a total stranger would not necessarily have sufficient understanding of the circumstances of the entry to give valid consent to an entry. On the other hand once a maid, friend, or employee is given general consent to enter a house at certain times, that consent will generally remain valid until revoked or the terms of the consent exceeded. See, Conner v. State, 85 Tex.Cr. 98, 210 S.W. 207.
The significance of the consent of the occupant in a burglary offense grows out of the rationale behind burglary statutesthat a man's home is his castle. (2 Blackstone Commentaries [Jones ed., 1916] *1337 § 258 p. 2430). Burglary laws are not designed primarily to protect the inhabitant from unlawful trespass and/or the intended crime, but to forestall the germination of a situation dangerous to the personal safety of the occupants. People v. Lewis, 274 Cal. App.2d 912, 920, 79 Cal.Rptr. 650, 655 (1969). This concern is reflected in the Reporter's Comments to La.R.S. 14:60: "there may also be great danger to human life in the burglarization of vessels, trailers, and the like." (emphasis provided)
In the archetypal burglary an occupant of a dwelling is startled by an intruder who may inflict serious harm on the occupant in his attempt to commit the crime or to escape from the house. The frightened occupant, not knowing whether the intruder is bent on murder, theft, or rape, may in panic or anger react violently, causing the burglar to retaliate with deadly force. People v. Lewis, 79 Cal.Rptr. at 655.
This violent scenario is far less likely to unfold where the intruder with felonious intent is known to the occupant and has expressed or implied consent to be on the premises. Thus in Dunn, supra, a thief's entry into a business during business hours with the intent to steal did not in itself provoke the defensive reaction of the occupant or owner that may have led to further violence to the occupant or bystanders. Similarly where an employee or friend is on the premises with the consent, express or implied, of an occupant, the discovery of the crime is far less likely to provoke the violence that the burglary statute is designed to discourage.
In regard to the first count, Lozier did not have the consent of the occupant to enter. Angela Clay, the accomplice who let him in, did not have the right to authorize his entry. It was clearly "unauthorized". In the second count Lozier entered with the apparent consent of the occupant, Mr. Havhuburg. That consent was based solely on the understanding that Lozier and his accomplice were police officers. It is clear from the record that Mr. Lozier's misrepresentation prevented Havhuburg from having a sufficient understanding of the circumstances of the entry to validly consent to Lozier's entry. While Lozier's entry did not immediately create a situation that would precipitate violence, the discovery of the fraud by Havhuburg might have created the potentially deadly situation that R.S. 14:60 protects people against. We conclude that Carl Lozier's entry into the Havhuburg residence was "unauthorized".
Defendant contends that the trial court erred in allowing into evidence in the multiple bill hearing a certified copy of prison documents from the Louisiana State Penitentiary and a certified copy of case number 239-508 of the Orleans Parish Criminal District Court Docket. Defendant's contention is without merit. The documents from the Louisiana State Penitentiary were properly certified under La.R.S. 15:529.1(F)[5] by the officer with legal custody of the documents. State v. Nicholas, 359 So.2d 965 (La.1978). Defendant did not object to the introduction of the Orleans Parish Criminal District Court Docket documents on the grounds that they were not properly certified. These bases of the objection were raised for the first time on appeal. It is well settled that a new basis for an objection cannot be raised for the first time on appeal. State v. Holstead, 354 So.2d 493 (La.1977).
*1338 Defendant's fifth assignment of error is also groundless. We held in State v. Jones, 332 So.2d 461 (La.1976) that the sentence enhancement proceeding is deemed to be part of the original prosecution and the trial judge "`had the right to take judicial cognizance of any prior proceeding which was a part of the same case he had previously tried.'" State v. O'Day, 191 La. 380, 185 So. 290 (1938).

Decree
For the foregoing reasons the convictions of the defendant for aggravated burglary are affirmed.
AFFIRMED.
TATE, J., dissents and assigns reasons.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent from the majority's opinion that the entry at 1323 St. Andrews Street # 7 was an unauthorized entry. The record reveals that Lozier and his accomplice, disguised as a police officer, appeared at the apartment on St. Andrews and announced that they were policemen looking for counterfeit money. The occupants let defendant and his accomplice into their apartment and cooperated by giving them their money. It is clear that the entry was procured by deception, in that the occupants authorized defendant and his accomplice to enter their apartment because they thought that they were policemen.
This court in State v. Dunn, 263 La. 58, 267 So.2d 193 (1972), construed the term "unauthorized entry" not to encompass an entry gained with consent, express or implied.[1] The court went further to hold that whether an entry is unauthorized must be determined as a distinct element of the offense separate and apart from the intent to steal, reasoning that if the legislature had desired that burglary consist only of an entry with intent to steal, it would have omitted the word "unauthorized." Since the entry itself must be unauthorized, the second conviction of defendant should be reversed, because the State presented no evidence of unauthorized entry.
TATE, Justice, dissenting.
I respectfully dissent. Assignment 2 presents prejudicial and reversible error, for reasons of interest only to the parties and set forth in an unpublished appendix to this dissent.
The majority does not reach the merits of the assignment. It holds that the defendant waived it by not making a contemporaneous objection.
The defendant's counsel called the juror's violation of La.C.Cr.P. art. 793 to the attention of the trial judge immediately after the jury had retired, and well before verdict. Defense counsel thus brought to the attention of the trial court the possible misconduct immediately after it occurred and well before verdict.
I would not hold that he waived his right to complain of the error when he observed ordinary trial courtesy and decorum by not interrupting (by objection or bench conference) the judge's (re)instructions to the deadlocked jury, after it had returned to request further instructions from the judge. His objection was voiced as contemporaneously as was consistent with trial decorum.
NOTES
[1] Louisiana Code of Criminal Procedure Article 487 provides:

"A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance.
B. Nothing contained herein shall be construed to prohibit the defendant from entering a plea of guilty to a crime nonresponsive to the original indictment when such a plea is acceptable to the district attorney, and in such case, the district attorney shall not be required to file a new indictment to charge the crime to which the plea is offered."
[2] Louisiana Code of Criminal Procedure Article 793 provides:

"A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict."
[3] The state contends that this question was decided in State v. Smith, 156 La. 685, 101 So. 22 (1924). In Smith there were instructions to the jury that entry gained through fraud or the threat of force would satisfy the "breaking" requirement of the burglary statute. That instruction was of no significance in the trial because the court noted:

"It appears from the record that the defendant obtained entry into the dwelling by violence and by the use of a dangerous weapon." Smith, supra.
[4] R.S. 14:60 provides:

"Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
Whoever commits the crime of aggravated burglary shall be imprisoned at hard labor for not less than one nor more than thirty years."
[5] R.S. 15:529.1(F) provides:

"The certificates of the warden or other chief officer of any state prison, or of the superintendent or other chief officer of any penitentiary of this state or any other state of the United States, or of any foreign country, under the seal of his office, if he has a seal, containing the name of the person imprisoned, the photograph, and the finger prints of the person as they appear in the records of his office, a statement of the court in which a conviction was had, the date and time of sentence, length of time imprisoned, and date of discharge from prison or penitentiary, shall be prima facie evidence on the trial of any person for a second and subsequent offense of the imprisonment and of the discharge of the person, either by a pardon or expiration of his sentence as the case may be under the conviction stated and set forth in the certificate."
[1] The precise holding of the court in that case was that an entry into a building open to the public is not an unauthorized entry.